UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOYCE SULLIVAN, as Administratrix ) <br> of the Estate of JEFFREY SULLIVAN, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> TARGET CORPORATION and ) <br> JOHN DOE, ) <br> ) <br> Defendants. ) | CIVIL ACTION <br> NO. 13-13118-GAO |

# REPORT AND RECOMMENDATION ON
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

June 5, 2015

DEIN, U.S.M.J.

## I. INTRODUCTION

This diversity action arises out of injuries allegedly sustained by the plaintiff, Jeffrey Sullivan,[1] on July 2, 2013, when he pushed open automatic swing exit doors at Target Corporation's store in Seekonk, Massachusetts, with the motorized scooter in which he was riding. The incident was captured by the defendant's security cameras. The undisputed facts establish that the doors were operating as intended, and had not opened automatically due to the presence of persons on the other side of the door who were standing within the safety zone designated by industry standards. When he realized

---

[1] Mr. Sullivan died while this matter was pending due to causes unrelated to this litigation. His wife, as Administratrix, has been substituted as the plaintiff. However, for convenience, Mr. Sullivan will be referred to as the plaintiff.

that the doors were not opening automatically, Mr. Sullivan proceeded forward and pushed the door open with his scooter, basically using it as a battering ram. Mr. Sullivan was not hit by the door, but was allegedly injured when he twisted his knee out of the way to make sure that it was not going to get hit by the door when he pushed it open.

Mr. Sullivan has brought a two count amended complaint (Docket No. 1-3) alleging that Target was negligent in failing to maintain its property in a reasonable and safe manner (Count I, ¶ 7), and that it breached its contractual obligations, owed to Mr. Sullivan as a business invitee, to maintain its property in a reasonable and safe manner. (Count II, ¶ 12). This matter is presently before this court on "Defendant Target Corporation's Motion for Summary Judgment" (Docket No. 15) by which Target is seeking judgment in its favor on all counts of the complaint. For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Target's motion for summary judgment be ALLOWED.

## II. STATEMENT OF FACTS[2]

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. See Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008). Applying this principle, the relevant facts are as follows.

**The Accident**

The plaintiff was a business invitee at the Target Store in Seekonk, Massachusetts on July 2, 2013. (See DF ¶ 4). The accident happened while he was exiting the store after he had completed his shopping. He was riding on a motorized scooter. The incident was captured on Target's security video, and Target has provided the court with a 40 minute surveillance video that captured this incident between time stamp 12:59:27 and 12:59:50. (DF ¶¶ 7-9; Def. Ex. F).

The front of the Target store contains two sets of doors, which open into a vestibule through which customers can enter and exit the store. On the left side (as one is facing the store from the outside of the building) there are manual doors, which can be pushed open to enter the vestibule and then exit the store, while on the right side there are

---

[2] The facts are derived from the following materials: (1) Defendant Target Corporation's Concise Statement of Undisputed Material Facts ("DF") contained in its Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Mem.") and attached exhibits ("Def. Ex. __") (Docket No. 16); and (2) Plaintiff's Statement of Material Facts ("PF") contained in Plaintiff's Memorandum of Law in Opposition of Defendant's Motion for Summary Judgment ("Pl. Mem.") and attached exhibits ("Pl. Ex. __") (Docket No. 19). The plaintiff has not filed a response to the defendant's statement of facts indicating whether any facts are admitted or denied, but has filed his own (unnumbered) statement of facts. Similarly, the defendant has not responded to the plaintiff's statement of facts. Nevertheless, as detailed herein, it is clear that the material facts are not in dispute.

automatic doors, which swing open into the vestibule toward the street.  (PF at 2; DF ¶¶ 9-10).  There is a metal rail divider inside the vestibule between the two sets of doors.  (DF ¶ 18).  At the time of the incident, a woman came through the manual door and held it open for a man, children, and others.  (DF ¶¶ 10-11).  In so doing, the woman walked around the metal divider and she and a child ended up in front of the automatic swing door through which the plaintiff was attempting to exit.  (DF ¶ 20; Def. Ex. E at 21).  The plaintiff noticed the woman and two children, but was not aware that their presence would prohibit the automatic doors from opening.  (Def. Ex. E at 15-18).  As detailed below, the presence of the woman and child in the "safety zone" prevented the automatic doors from opening, and the doors were designed that way in order to prevent them from hitting anyone who was present on the other side.  There were no signs or other indication on the automatic doors warning that the doors would not open if there were people on the other side within the so-called safety zone.  (PF at 4).

     Mr. Sullivan was riding on a motorized scooter as he approached the automatic doors from inside the Target store.  According to Mr. Sullivan, the doors did not open as he expected.  (Def. Ex. E at 18) ("I was pushing the door with the scooter.  The door would not open on its own.").  He did not wait and try again, or ask for assistance.  (Id. at 14).  Instead, he continued to exit by pushing the doors open with his scooter.  When he felt "the door sticking, not opening, . . . [he] twisted [his] leg to make sure that the door wasn't going to hit it."  (Id. at 20).  The door never came into contact with his leg, but

apparently the movement of his knee caused it to "pop" and resulted in a torn ligament. (Id. at 19).

As evidenced in the video, once the woman and child moved out of the way of the automatic doors, they opened normally. (DF ¶ 29). In fact, the video shows the automatic swing doors operating without incident for approximately twenty minutes before and for more than ten minutes after the incident. (Id. at ¶ 27). It is undisputed, and Target has videotape evidencing, that the doors operated normally for over six hours before the plaintiff's incident. (Id. ¶ 30).

### **The Design of the Door**

Target has submitted an affidavit from John Foell, a Lead Project Architect and an Architectural Specification Writer for Target who, in this capacity, is familiar with the design and operation of automatic swing doors utilized by Target. (Def. Ex. H ¶¶ 2, 7). As Mr. Foell attested, the automatic swing doors at issue have a motion sensor on the activation side to detect approaching shoppers and prompt the doors to open. (Id. ¶ 12). These doors also have Exterior Threshold Safety Sensors located on the swing (vestibule) side of the doors that contain (1) a safety sensor that detects when a person or object is moving within the safety zone of the swing (vestibule) side of the doors and (2) a safety sensor that reads the ground for stationary objects in the safety zone of the swing (vestibule) side of the doors. (Id. ¶¶ 13-15). Either or both of these sensors will prevent the door from opening when something or someone is in the safety zone. (Id. ¶ 16). The minimum safety standard for this type of automatic swing door, contained in ANSI

Standard A.156.10[3] entitled "Power Operated Pedestrian Door Standard," states that the combination of these two Exterior Threshold Safety Sensors must detect people and/or objects that are within a safety zone that is a minimum of 41 inches from the face of the closed doors outward. (Id. ¶ 17). If a person leaves or moves in and out of the safety zone, there is a delayed reset of two seconds before the sensors will allow the doors to automatically open. (Id. ¶ 18).

Mr. Foell has opined, based on his review of the video, that the woman who exited the manual doors at time stamp 12:50:30 was within the safety zone of the automatic swing door's Exterior Threshold Safety Sensors as Sullivan approached the exit doors on his motorized scooter. (Id. ¶ 19). Mr. Foell has further attested that "[t]he woman's presence in the safety zone prevented the subject automatic swing doors from opening as long as she was standing in the safety zone" and that when "the woman using the manual doors had moved out of the safety zone . . . the automatic swing doors opened normally." (Id. ¶¶ 20–21). Based on his consideration of this evidence, Mr. Foell has concluded that "the automatic swing door and sensor package operated properly, as designed and in compliance with ANSI Standard A.156.10." (Id. ¶ 22). Mr. Sullivan has not submitted any evidence to contradict Mr. Foell's opinion.[4]

---

[3] The plaintiff does not dispute that the American National Standards Institute (ANSI) standard A.156.10 governs the doors at issue in this case.

[4] Although the plaintiff testified that the woman who appeared before the automatic doors at 12:59:40 was out of the safety zone, he admitted that he had no knowledge regarding the parameters of the safety zone. (Def. Ex. E at 46). Therefore, his testimony on this subject does not create a disputed issue of fact.

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. Summary Judgment Standard of Review

By its motion, Target is seeking summary judgment on each of the plaintiff's claims. "The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional quotation omitted). Accordingly, the burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg, 548 F.3d at 56 (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, Ltd., 794 F. Supp. 2d at 275. "[T]he nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505,

2514, 91 L. Ed. 2d 202 (1986)). "The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor." PC Interiors, Ltd., 794 F. Supp. 2d at 275. "Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id.

### B. Standard of Review - Negligence

As the parties agree, Massachusetts law applies to this diversity action. See Asymmetrx Med., Inc. v. McKeon, 932 F. Supp. 2d 232, 238 (D. Mass. 2013) ("Under Massachusetts choice-of-law rules, tort claims are governed by the law of the state in which the injury occurred . . . ."). To establish liability on a claim for negligence, the plaintiff must show that "'the defendant owed the plaintiff a duty of reasonable care, and the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage.'" Pritchard v. Stanley Access Tech., LLC, No. CA 08-11762-DPW, 2011 WL 309662, at *2 (D. Mass. Jan. 27, 2011) (quoting Lev v. Beverly Enters.-Mass., Inc., 457 Mass. 234, 240, 929 N.E.2d 303, 309 (2010)). As the plaintiff, Mr. Sullivan bears the burden of proof on each element of his negligence claim. See Glidden v. Maglio, 430 Mass. 694, 696, 722 N.E.2d 971, 973 (2000) (plaintiff bears "the burden of proving that the defendant committed a breach of the duty to use reasonable care, that the plaintiff[] suffered actual loss, and that the defendant's negligence caused [his] loss."). Nevertheless, "[a] court should not grant a

party's motion for summary judgment merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial." Foley v. Matulewicz, 17 Mass. App. Ct. 1004, 1005, 459 N.E.2d 1262, 1262 (1984) (internal quotation omitted).

"Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury." Dos Santos v. Coleta, 465 Mass. 148, 154, 987 N.E.2d 1187, 1192 (2013) (quoting Davis v. Westwood Group, 420 Mass. 739, 742-43, 652 N.E.2d 567, 569 (1995)). The parties agree that the appropriate standard in the instant case is that "[a]n owner or possessor of land owes a common-law duty of reasonable care to all persons lawfully on the premises." Dos Santos, 465 Mass. at 154, 987 N.E.3d at 1192 (citing Davis, 420 Mass. at 743, 652 N.E.2d 567). This duty includes an obligation (1) to maintain "the property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk;" and an obligation (2) "to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware." Id. (internal citations and quotations omitted). "However, landowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such blatant hazards." Id. (internal quotations and punctuation omitted). Furthermore, this duty does not obligate a landowner "to supply a place of maximum

safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate." Lyon v. Morphew, 424 Mass. 828, 833, 678 N.E.2d 1306, 1310 (1997) (quoting Gadowski v. Union Oil Co., 326 F.2d 524, 525 (1st Cir. 1964)).

Applying these principles to the instant case compels the conclusion that Target's motion for summary judgment must be allowed.

### C. **Plaintiff Has Not Established a Breach of a Duty of Care**

Mr. Sullivan contends, without citation, that the fact that the doors became "immobilized" when there were persons on the other side of the door constituted "an inherent defect in the design and/or function of the automatic functioning doors[.]" (Pl. Mem. at 7). He argues further that "[k]nowing that this condition existed, the Defendant should have provided warning signs or some other mechanism to inform patrons attempting to exit the store that the doors would become immobilized when patrons are on the other side." (Pl. Mem. at 8). These arguments are unpersuasive. The plaintiff has not established that Target failed to maintain its store in a reasonably safe manner, or that any dangers which may have existed were not open and obvious. Rather, according to the plaintiff himself, he knew how automatic doors operated, he knew that the door did not open as he had expected, and he nevertheless misused the automatic door by manually pushing through it into the vestibule. There is no liability on the part of Target.

The uncontradicted evidence establishes that the automatic doors functioned as designed, and in accordance with industry standards. Thus, the doors were designed and

operated so that they would not swing open and hit people standing on the other side of the door. Moreover, the sensors that prevented the doors from opening also stopped people from going through the doors and hitting others within the safety zone located on the other side. The plaintiff has cited no cases, and none have been found, where an automatic door, operating as expected, created a dangerous situation warranting a warning or other intervention by the property owner. Automatic doors "are ubiquitous, affording the public safe ingress and egress to countless facilities on a daily basis." Pritchard, 2011 WL 309662, at *4 (quoting Landmark Hotel & Casino, Inc. v. Moore, 104 Nev. 297, 301, 757 P. 2d 361, 364 (Nev. 1988)) (per curiam). Consequently, "when automatic doors operate as expected, they present an open and obvious danger, foreclosing recovery on negligence claims." Mann v. Tractor Supply Co., No. 2:08-cv-569, 2010 WL 1856312, *2-3 (S.D. Ohio, May 10, 2010) (because evidence could support a finding that door did not operate as expected, summary judgment denied) (and cases cited). See also Abelleria v. Door Control, Inc., No. 2262010CV00159, 2012 WL 9496066, at *3 (N.H. Super. June 1, 2012) (courts have consistently held "that the danger presented by a properly functioning automatic door is open and obvious" so there is no duty to warn that door will close automatically), and cases cited. "An automatic door is not such a modern invention or unusual occurrence that it would take a person of average intelligence by surprise." Cassani v. Meijer, Inc., No. 240486, 2003 WL 1365919, at *3 (Mich. Ct. App. Mar. 18, 2003) (summary judgment in favor of defendant store where

plaintiff bent over in front of door and was struck when it opened automatically as designed).

Admittedly, no cases have been found addressing the situation in which a properly functioning automatic door prevented it from opening and striking people standing behind it. Rather, the available cases address the situation where a person was struck by a door opening automatically. Nevertheless, given the "ubiquitous" nature of automatic doors, and the fact that the plaintiff knew that the door was not opening automatically before he elected to proceed, the same analysis should apply. Where, as here, the automatic door did not open as designed, any danger in continuing to proceed was an open and obvious danger. Target cannot be liable because Sullivan decided to attempt to circumvent the proper functioning of the door and convert the automatic door into a manual exit.

Summary judgment in favor of Target must be entered for the additional reason that the plaintiff has failed to establish that Target breached its duty of care despite its compliance with the applicable ANSI standard. "ANSI is a private non-profit organization that oversees the development of voluntary consensus standards for products, services, processes, systems, and personnel . . . . ANSI standards are widely accepted throughout the United States and internationally as an authoritative source for safety compliance." National Sur. Corp. v. India Tea & Spices, Inc., No. 09-11771-LTS, 2012 WL 113608, at *2 n.1 (D. Mass. Jan. 12, 2012). The ANSI standards are "helpful to the trier of fact in deciding whether the defendant has met the standard of care due," but they are not controlling. Hansen v. Abrasive Eng'g & Mfg., Inc., 317 Or. 378, 384,

856 P.2d 625, 628 (1993). See also Jenks v. N.H. Motor Speedway, No. 09-cv-205-JD, 2012 WL 405479, at *2-3 (D.N.H. Feb. 8, 2012) (failure to meet ANSI standards not conclusive on issue of negligence). Thus, while "proof of compliance with industry practice militates against a finding of negligence[,]" evidence of compliance with industry standards "is not conclusive upon the issue and can be overcome by countervailing relevant evidence from which a jury could find negligence notwithstanding conformity with industry usage. It is, however, a plaintiff's burden to bring forward such evidence, at the peril of losing the summary judgment battle and thus the litigation war." Bergendahl v. Mass. Elec. Co., 45 Mass. App. Ct. 715, 720, 701 N.E.2d 656, 660 (1998). In the instant case, Sullivan has not put forth any evidence refuting the defendant's contention that it exercised reasonable care by designing the automatic doors in conformity with industry standards. For this reason as well, Target's motion for summary judgment should be allowed.

## IV. **CONCLUSION**

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that "Defendant Target Corporation's Motion for Summary Judgment" (Docket No. 15) be ALLOWED.[5]

---

[5] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly

                                                 / s / Judith Gail Dein
                                                 Judith Gail Dein
                                                 U.S. Magistrate Judge

---

indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).